## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NATHANIEL CLARK,
     Plaintiff,

     v.

MARK BOUGHTON, in his official
capacity as Commissioner of the
Department of Revenue Services,

JOHN BIELLO, individually, and in his
official capacity as Acting Commissioner of
the Department of Revenue Services, and

LOUIS BUCARI, JR., individually, and in
his official capacity as First Assistant
Commissioner of the Department of
Revenue Services,
     Defendants.

No. 3:21-cv-1372 (SRU)

### OMNIBUS RULING ON PENDING MOTIONS

Less than two weeks after plaintiff Nathaniel Clark presented legislative testimony highly

critical of the Department of Revenue Services and its second-in-command, his wife— an

attorney employed by the department— was subject to discipline culminating in her eventual

termination.  Clark alleges that two agency officials, Acting Commissioner of Revenue Services

John Biello and First Assistant Commissioner of Revenue Services Louis Bucari, Jr.

(collectively, "Defendants"), acting in their individual capacities, retaliated against him for his

testimony by firing his wife.  Through this ruling, I take up Clark's motion to compel production

of certain discovery, and Defendants' motions to strike portions of Clark's second amended

complaint and dismiss it.  For the following reasons, I **grant** Clark's motion to compel, **grant**

Defendants' motion to strike, and **grant in part** and **deny in part** Defendants' motion to

dismiss.

I.      **Background**

A.   Factual Allegations[1]

Nathaniel Clark ("Clark") is software engineer from Glastonbury, Connecticut.  Second

Amended Complaint ("SAC"), Doc. No. 68, ¶ 2.  He is the husband of Marilee Clark ("Marilee

Clark"), who until February 21, 2020 was the Tax Legal Director of the Connecticut Department

of Revenue Services ("DRS").  *Id.* ¶¶ 2, 8.  Together, Nathaniel and Marilee Clark are the

"Clarks."  At all relevant times, defendant John Biello was the Acting or Deputy Commissioner

of Revenue Services and defendant Luis Bucari was the First Assistant Commissioner of

Revenue Services.  *Id.* ¶¶ 3-4, 10.  Together, they are "Defendants."  Defendants were aware at

all relevant times that the Clarks were married to one another.  *Id.* ¶¶ 14-15.

On February 21, 2020, the Clarks and Defendants attended a committee hearing of the

Connecticut legislature's Judiciary Committee concerning Connecticut House Bill 5050 (2020)

("H.B. 5050").  *Id.* ¶¶ 16, 18-19.  At the hearing, Clark gave public comment in which he

"excoriated the wasteful position of First Assistant Commissioner at DRS" in light of the fact

that "its only statutory responsibility is to oversee a tax that had sunset 15 years prior," asserted

views concerning "what the bill should accomplish," and explicitly criticized Bucari ("the

Testimony").  *Id.* ¶ 17.  Defendants, sitting together and "conf[e]r[ring] regularly," heard Clark's

oral testimony and read his written comments; and Bucari later that day sent Biello a copy of the

written testimony.  *Id.* ¶¶ 18, 20-22.  On that same day, Marilee Clark ceased being the Tax

Legal Director at DRS.  *Id.* ¶ 8.

---

[1] The factual allegations recited here are taken from the original complaint, the text of Clark's legislative testimony, and the Second Amended Complaint, and they are assumed to be true.  *See Moses v. St. Vincent's Special Needs Ctr., Inc.*, 2021 WL 1123851, at *4 n.4 (D. Conn. Mar. 24, 2021) (supplementing the allegations of a *pro se* plaintiff's amended complaint with the allegations set forth in the original complaint).

Twelve days later, on March 4, 2020, Clark filed a Freedom of Information Act ("FOI") request for communications between Biello and Bucari. *Id.* ¶ 30. On that same day, Marilee Clark received a notice of a pre-disciplinary *Loudermill* hearing. *Id.* ¶ 31.

At an unspecified time after March 4, 2020, Marilee Clark suffered a "flare-up" of a medical condition caused by stress, resulting in her taking medical leave from work and having two surgeries. *Id.* ¶¶ 33-36. Her health issues further delayed resolution of the disciplinary process. *Id.*

On October 14, 2020— after a process that included a *Loudermill* notice and hearing, and proceedings before the Commission on Human Rights and Opportunities and the Employee Review Board ("ERB")— Marilee Clark was terminated from her employment at DRS. *Id.* ¶ 38.

The State of Connecticut has asserted throughout the employee discipline process that Marilee Clark was fired for not notifying Biello of the draft language of H.B. 5050. *Id.* ¶ 39. Clark contends that Biello fired Marilee Clark and that Bucari "aided" Biello in doing so, in retaliation for the Testimony. *Id.* ¶¶ 23, 36-38. Clark alleges without elaboration that Biello "singled [Marilee Clark] out for discipline" for conduct for which other employees "with the same knowledge" were not disciplined. *Id.*

In an affidavit in connection with Clark's FOI request, Biello noted without elaboration that Marilee Clark was "dismissed as a result of conduct directed at Attorney Bucari," which Clark construes as suggesting that Clark's conduct "resulted in [Marilee Clark's] dismissal." *Id.* ¶ 42 (quoting Biello Aff., Doc. No. 46-1, ¶ 15).

Clark further alleges that the retaliation is ongoing because the State "attempted to introduce" the instant lawsuit "into evidence against Attorney Clark" in the ERB process, and Biello filed a grievance against Marilee Clark "concern[ing] purported actions by [Marilee]

Clark that occurred in Feb[ruary] of 2020" with the Connecticut Bar Association, which was dismissed in June of 2020 as "baseless." *Id.* at ¶¶ 45-48. To Clark, the grievance against Marilee Clark was in retaliation for Clark's efforts to seek Bucari's disbarment in an earlier complaint in this proceeding. *Id.* ¶ 49.

B. Procedural History

In October of 2021, Clark filed a *pro se* civil rights complaint alleging that Marilee Clark was fired in retaliation for Clark's protected speech ("Original Complaint"). Doc. No. 1. Defendants Biello and Bucari, in their individual capacities, and defendants Mark Boughton, Biello, and Bucari, in their official capacities, moved to dismiss the Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Docs. No. 17, 33. On October 3, 2022, construing the Original Complaint in tandem with the text of the Testimony, I granted in part and denied in part the motion to dismiss by the defendants acting in their individual capacities ("Individual Capacity Defendants"), and I granted the motion to dismiss by the defendants acting in their official capacities and dismissed with prejudice the claims against them. *See generally* Oct. 3, 2021 Ruling on Defs.' Mot. to Dismiss ("MTD Ruling"), Doc. No. 41. I declined to dismiss Clark's claim that Biello had retaliated against him for the Testimony in violation of the First Amendment and declined to dismiss the complaint on qualified immunity grounds. I granted Clark leave to replead his claims that Bucari had retaliated against him for his protected speech and that Biello and Bucari had conspired to violate his First Amendment rights in violation of 42 U.S.C. § 1983. *Id.* Shortly thereafter, I lifted the stay of discovery in this matter. Doc. No. 42.

On November 1, 2022, Clark submitted a document labeled an amended complaint ("Amended Complaint") against Biello and Bucari, in their individual capacities, which

Defendants soon moved to strike and to dismiss.  Docs. No. 46, 49, 50.  At a telephonic hearing, I granted Defendants' motion to strike portions of the Amended Complaint, denied without prejudice Defendants' motion to dismiss the Amended Complaint, and granted Clark leave to file a second amended complaint in light of the noncompliance of the Amended Complaint with Federal Rule of Civil Procedure 8.  Docs. No. 65-66.

On February 8, 2023, Clark moved to compel production of his interrogatories dated December 23, 2022; documents requested in the requests for production dated December 5, 2022 and December 23, 2022; and Defendants' privilege log.  Pl.'s Mot. to Compel, Doc. No. 67. Defendants opposed the motion to compel on February 27, 2023.  Doc. No. 71.

On February 13, 2023, Clark timely filed a second amended complaint ("the Second Amended Complaint").  SAC, Doc. No. 68.  The Second Amended Complaint alleges substantially similar facts as the Original Complaint and asserts claims arising under 42 U.S.C. § 1983 for retaliation for exercise of protected speech, in violation of the First Amendment; conspiracy to infringe rights arising under the First Amendment; interference with intimate association, in violation of the First and Fourteenth Amendments; and conspiracy to interfere with protected intimate association.  *See generally id.* at 7.

On February 22, 2023, Defendants moved to strike two of the claims for relief in the Second Amended Complaint.  Defs.' Mot. to Strike, Doc. No. 70.

In addition, on February 27, 2023, Defendants moved to dismiss the Second Amended Complaint on the following bases: (1) that Clark lacks standing to assert claims of injuries to his spouse; (2) failure to state a claim of interference with intimate association; (3) failure to state a claim of First Amendment retaliation; (4) qualified immunity, as to Bucari; and (5) that some of the relief sought is not available.  Defs.' Mot. to Dismiss, Doc. No. 70.  In their Memorandum of

Law, Defendants further assert that the SAC fails the pleading standard set by Federal Rule of Civil Procedure 8.  Defs.' Mem., Doc. No. 70-1, at 8.

Clark opposed the motions to strike and to dismiss on March 15, 2023 and March 20, 2023 respectively, and Defendants replied on March 28, 2023 and April 6, 2023.  Docs. No. 72-73.

The three pending motions are presently before me.  Because no party requested argument, I decide the motions without it.

## II.       Motion to Compel, Doc. No. 67

Clark moves to compel production of answers to Plaintiff's interrogatories dated December 23, 2022; documents requested in the requests for production dated December 5, 2022 and December 23, 2022; and Defendants' privilege log.  Pl.'s Mot. to Compel, Doc. No. 67. Defendants oppose the motion, contending that they have produced all of the requested discovery.  Defs.' Opp'n to Pl.'s Mot. to Compel, Doc. No. 71.  Clark asserts in reply that, *inter alia*, Defendants' oath pages for the interrogatories were defective because they were signed by counsel for the defendants and did not certify that Defendants were the individuals who responded to the interrogatories.  Reply, Doc. No. 75, at 2.  Although it appears that Defendants have otherwise complied with Clark's discovery requests, the interrogatory responses described by Clark are defective.

Federal Rule of Civil Procedure 33(b) provides in relevant part that:

> (1) The interrogatories must be answered [] by the party to whom they are directed; . . .
>
> (3) Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. . . .
>
> (5) The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed. R. Civ. P. 33(b).

Here, to any extent that Defendants' responses are not made under oath and signed by the person making the response, the responses are deficient.

Accordingly, I **grant** Clark's motion to compel, and I order Defendants to promptly answer the applicable interrogatory or interrogatories in accordance with Rule 33.

## III.    Motion to Strike, Doc. No. 69

Defendants seek to strike two of the claims for relief in the Second Amended Complaint because the relief sought is not available.

The Federal Rules of Civil Procedure provide that the Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  Fed. R. Civ. P. 12(f).  Motions to strike are disfavored, and "the courts should not tamper with the pleadings unless there is a strong reason for so doing."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Defendants ask the Court to strike the claims for relief seeking a declaration that Bucari "violated professional ethics as an attorney and his oath" ("Second Prayer for Relief") and that Biello "violated his oath of office" ("Third Prayer for Relief").  Defs.' Mot. to Strike, Doc. No. 69, at 1-2 (citing SAC, Doc. No. 68, at 6 ¶¶ 6-8).  Defendants reason that the relief sought is not recoverable as a matter of law because Clark cannot obtain prospective injunctive or equitable relief in light of the facts that (1) he is not bringing claims against any state official in his official capacity, and (2) he seeks redress for past alleged violations of federal law.  *Id.* at 7 (citing *Ex parte Young*, 209 U.S. 123 (1908)).  Defendants additionally assert that the relief sought is "extreme," a "reprisal for the Defendants' alleged involvement in the dismissal of his wife from state service" rather than a "just award of compensation," and will not redress his alleged

injuries.  *Id.* at 7-8.  Clark argues in opposition that the relief sought is declaratory— thus, neither prospective, injunctive, nor (by implication) barred by *Ex parte Young*— proportionate, and germane.  Pls.' Opp'n to Defs.' Mot to Strike, Doc. No. 72, at 1-2.

A court may deny declaratory relief that will not "serve a useful purpose in clarifying and settling the legal relations in issue" nor "terminate the proceedings and afford relief from the uncertainty and controversy giving rise to the proceeding."  10B Fed. Prac. & Proc. Civ. § 2759 (4th ed.).  This Court has no jurisdiction to discipline an attorney in a forum other than this Court, including but not limited to authority to admonish an attorney employed by the state for violating his oath of office.  *See In re Snyder*, 472 U.S. 634, 645 n.6 (1985).  To any extent that Clark may wish to discipline Defendants in this Court for their conduct, any attempt to do so requires employing this Court's rules and procedures— which Clark has not done here.  *See* D. Conn. L. Civ. R. 83.2(c).  Therefore, neither of the Second and Third Requests for Relief will serve a useful purpose nor redress Clark's injuries.

Accordingly, I **grant** Defendants' motion to strike the Second and Third Requests for Relief.

## IV.    Motion to Dismiss, Doc. No. 70

The Second Amended Complaint asserts claims arising under 42 U.S.C. § 1983 for: (1) retaliation for exercise of protected speech, in violation of the First Amendment; (2) conspiracy to infringe rights protected by the First Amendment; (3) interference with intimate association, in violation of the First and Fourteenth Amendments; and (4) conspiracy to interfere with protected intimate association.  SAC, Doc. No. 68, at 7.  I take Defendants' challenges to each claim in turn, after addressing two threshold issues.

A. <u>Standards of Review</u>

   1. *Federal Rule of Civil Procedure 8*

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Ricciutti v. New York Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (cleaned up).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."  *Ricciutti v. New York Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (cleaned up).

As a self-represented party, Clark is not expected to be familiar with all of the formalities of federal pleading requirements.  Nevertheless, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."  *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).  To state a claim, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

2. *Federal Rule of Civil Procedure 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A party who moves to dismiss for lack of subject matter jurisdiction "may refer to evidence outside the pleadings." *Id.*  The party who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  To survive a motion brought under Rule 12(b)(1), a plaintiff must allege facts demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute. *Id*.  "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,'" such as when "the plaintiff lacks constitutional standing to bring the action." *Cortlandt Street Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal citations omitted).  "The plaintiff bears the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue.'" *Id*. (internal citations omitted). "[S]tanding cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *Martinez v. Malloy*, 350 F. Supp. 3d 74, 84 (D. Conn. 2018) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 232 (1990)).

In considering a Rule 12(b)(1) motion to dismiss for lack of standing, the Second Circuit construes "the complaint in [the] plaintiff's favor and accept[s] as true all material factual allegations contained therein." *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012); *see also Wiltzius v. Town of New Milford*, 453 F. Supp. 2d 421, 429 (D. Conn. 2006) ("In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor.") (internal citations omitted).  But "[a]

court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  In deciding a Rule 12(b)(1) motion, courts may also refer to evidence outside the pleadings.  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145, 146 (2d Cir. 2011) (per curiam).

    3.  *Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id*. at 556 (internal quotation marks omitted).

4.  *Construing Pro Se Pleadings*

Clark proceeds *pro se*.  Therefore, because he "generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection," his pleadings are entitled to "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); are assessed under "less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (cleaned up); and are interpreted "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (cleaned up).  On the other hand, a court's "duty to liberally construe a plaintiff's complaint" is not "the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).  A court will not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" nor "invent factual allegations" that are not in the pleadings.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

B.  <u>Threshold Issues</u>

First, Clark repeatedly asserts in his memorandum in opposition to Defendants' motion to dismiss that his claims against Biello should survive Defendants' motion to dismiss the Second Amended Complaint because I have already allowed the claims to survive Defendants' previous motion to dismiss them.  Pl.'s Opp'n, Doc. No. 73, at 2.  In general, an amended complaint "supplants rather than supplements a prior complaint" such that a motion to dismiss an amended

pleading requires that a court evaluate an amended pleading anew. *Moses v. St. Vincent's Special Needs Ctr., Inc.*, 2021 WL 1123851, at *4 n.4 (D. Conn. Mar. 24, 2021) (quoting *Olutosin v. Lee*, 2016 WL 2899275, at *1 n.1 (S.D.N.Y. May 16, 2016)). However, "in the case of *pro se* plaintiffs, courts typically consider allegations in both an original and amended complaint." *Id.* Because of Clark's *pro se* status, I treat the Second Amended Complaint as supplementing the original complaint. On that basis, I am sympathetic to the idea that claims surviving Defendants' motion to dismiss the Original Complaint should likewise survive the motion to dismiss the Second Amended Complaint.

Second, both Clark and Defendants repeatedly rely on allegations outside of the Original Complaint and the Second Amended Complaint in their memoranda of law. *See*, *e.g.*, Defs.' Mem., Doc. No. 70-1, at 21-22 ("A reasonable officer in . . . Bucari's position would have believed it appropriate for his superior Biello to terminate Ms. Clark's employment based on the existing law given her performance, independent of Plaintiff's protected speech."); Pl.'s Opp'n, Doc. No. 73, at 2 ("[Terminating Marilee Clark] would be an action within Bucari's perceived scope of responsibilities, as he prese[]nts himself as DRS's 'General Coun[sel].'"). It is well-settled, however, that neither party may draw upon facts outside the complaint in moving to dismiss the complaint or in opposing a motion to dismiss. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (limiting consideration on a motion to dismiss to "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference"). Defendants also repeatedly invite me to consider, based on evidence not set forth in the pleadings, that they terminated Marilee Clark for cause as a result of her performance. To that end, they mischaracterize Clark's allegation that state officials "claim[] that Attorney Clark was fired for not notifying Biello of draft language of HB5050" as "conced[ing] that Ms. Clark

was terminated for not notifying Biello of draft language of HB 5050." *Compare* Doc. No. 68, ¶ 39, *with* Defs.' Mem., Doc. No. 70-1, at 22.  But it is also well-settled that a district court may not "disregard allegations in the complaint and credit instead an alternative narrative advanced by defendants." *Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020) (summary order) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  As a result, I exclude from consideration facts Clark that first asserts in his opposition brief, and I decline Defendants' repeated invitations to consider alternative explanations for Marilee Clark's dismissal.  At this time, I am limited to the allegations in the pleadings and the Testimony.  The record will make room for Defendants' side of the story at summary judgment or at trial.

### C. Defendants' Loss of Consortium Red Herring

In the Second Amended Complaint, Clark newly alleges that "stress from the firing and persecution by the Defendants caused a flare-up of [Marilee] Clark's medical condition," requiring that Marilee Clark undergo surgery twice, which in turn caused Clark "a loss of consortium . . . for several weeks."  SAC, Doc. No. 68, ¶¶ 34-35.  Defendants construe these allegations as asserting a claim for loss of consortium, and they move to dismiss it on the bases that Clark lacks standing to assert the claims of Marilee Clark related to her medical flare up and that a derivative claim for loss of consortium is not cognizable under section 1983.  Defs.' Mem., Doc. No. 70-1, at 13-15 (citing *Karam v. Cnty. of Rensselaer, New York,* 2016 WL 51252, at *23 (N.D.N.Y. Jan. 4, 2016)).  Although I agree with Defendants that Clark lacks standing to state claims on behalf of Marilee Clark, I believe Defendants' argument is a red herring.[2]

---

[2] *See Camacho v. Brandon*, 69 F. Supp. 2d 546, 551 (S.D.N.Y. 1999) (citing *Singleton v. Wulff,* 428 U.S. 106, 114-16 (1976) (providing that third-party standing is only permitted in limited circumstances, such as when "(1) the relationship between the plaintiff and the third party is such that the plaintiff is fully, or very nearly, as effective a proponent of the third party's right as the third party itself; and (2) there is some obstacle to the third party asserting the right").

As set forth in my previous ruling on Defendants' motion to dismiss the Original Complaint, Clark alleges direct claims for injuries arising from Defendants' interference with his constitutional right to intimate association.  Clark's direct claims are, of course, distinct from any claim that he may or may not assert on behalf of his wife.  Likewise, his direct claims are distinct from any derivative claim that he may or may not assert for loss of consortium.  *See Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 494 (1979) ("[A] consortium action is derivative of the injured spouse's cause of action. . . .").  A consortium claim, in theory, recognizes that the tortious conduct causing injuries to one individual also injures others— traditionally, that the tortious conduct has deprived the injured party's spouse of "affection, society, companionship, and sexual relations." *Id.* at 487 (citation omitted).  But Marilee Clark is not a party to this action, and the Second Amended Complaint includes no allegations explicitly asserting that Marilee Clark's constitutional or statutory rights were violated.  Moreover, although Clark clearly identifies the causes of action set forth in the Second Amended Complaint, the pleading does not state an express cause of action for loss of consortium.  Thus, I do not construe the Second Amended Complaint to assert a derivative consortium claim originating from violations of Marilee Clark's civil or statutory rights, and I accordingly decline to Defendants' invitation to dismiss the purported loss of consortium claim.

D.  Substantive Claims: Counts One and Three

Through Counts One and Three, the Second Amended Complaint asserts substantive claims of constitutional deprivation.  I grant in part and deny in part Defendants' motion to dismiss them.

1.  *Count One: First Amendment Retaliation Claim*

Clark again asserts a substantive claim of First Amendment retaliation, which Defendants have again moved to dismiss.  *See* SAC, Doc. No. 68, at 7; Defs.' Mem., Doc. No. 70-1, at 17-18.  As previously explained, I treat the Second Amended Complaint as supplementing the Original Complaint, and I already concluded that Clark sufficiently stated a claim of First Amendment retaliation in the Original Complaint.  *See* MTD Ruling, Doc. No. 41, at 14-22.  Having fully considered the allegations in the Second Amended Complaint and Defendants' memorandum in support of their motion to dismiss, I see no reason to depart from my earlier ruling preserving Clark's substantive First Amendment retaliation claim.

Accordingly, Defendants' motion to dismiss Count One is **denied**.

2.  *Count Three: Intimate Association Claim*

In my previous ruling, I *sua sponte* construed the Original Complaint to raise a claim of deprivation of the right to intimate association.  *See* MTD Ruling, Doc. No. 41, at 24-25.  In the Second Amended Complaint, Clark expressly asserts a substantive claim of interference with intimate association arising under the First and Fourteenth Amendments, which Defendants have moved to dismiss.  *See* SAC, Doc. No. 68, at 7; Defs.' Mem., Doc. No. 70-1, at 16-17.  Defendants argue that the Second Amended Complaint fails to satisfy the standard for a deprivation of a substantive due process right.  Defs.' Mem., Doc. No. 70-1, at 16-17.

I begin by acknowledging that I declined to reach the source of the right to intimate association in my previous ruling, determining that Clark's allegations had implicated the right "[r]egardless of its source."  MTD Ruling, Doc. No. 41, at 24 n.10.  Because Defendants' memorandum addresses at length the source of the right to intimate association and the standards

applicable to a claim alleging its deprivation, I am compelled to provide a more thorough

analysis of Clark's intimate association claim.

It is well-established that the United States Constitution protects a multi-faceted right of

association: the right to associate with others in intimate relationships, and the right to associate

with others for the purpose of expressive conduct. *Roberts v. United States Jaycees,* 468 U.S.

609, 617-18 (1984); *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999).  However, the "nature and

extent" of the right to intimate association is "hardly clear," and both the Supreme Court and

Second Circuit have applied varying standards when assessing whether the right was violated.

*Adler*, 185 F.3d at 42-43; *see also Sharpe v. City of New York*, 560 F. App'x 78, 79 (2d Cir.

2014) (summary order) (observing same).

On the one hand, as the Second Circuit has observed, language in *Roberts* suggests that

the intimate association right arises under the Fourteenth Amendment Due Process Cause.  *See*

*Roberts*, 468 U.S. at 618-19 (providing that "the Bill of Rights is designed to secure individual

liberty" and thus "must afford the formation and preservation of certain kinds of highly personal

relationships a substantial measure of sanctuary from unjustified interference by the State," and

relying on a line of cases arising under the Fourteenth Amendment recognizing a substantive due

process right to family relationships and family privacy); *Sanitation & Recycling Indus., Inc. v.*

*City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (providing that the U.S. Constitution

"guarantees an individual the choice of entering an intimate relationship free from undue

intrusion by the state" and thus protects intimate association extending to relationships

"attend[ing] the creation and sustenance of a family," including marriage) (quoting *Roberts*, 468

U.S. at 619); *Adler*, 185 F. 3d at 42.

On the other hand, as the Second Circuit has further observed, courts have often analyzed under the First Amendment claims "asserting the sort of retaliatory action that is often tested against the First Amendment whenever adverse action is alleged to have been taken for exercise of any of the freedoms protected by the First Amendment." *Adler*, 185 F.3d at 43. In *Adler*, and relevant here, the Second Circuit determined that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association," reasoning that "[i]f the First Amendment accords an individual some right to maintain an intimate marital relationship free of undue state interference, Adler's claim" and other similarly-situated claims, "properly invoke[] the protection of that Amendment." *Id.* at 44. *Adler*, then, "establishes that First Amendment associational rights protect against state intrusion into a family relationship intended to retaliate for a family member's exercise of his or her First Amendment rights." *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47 (2d Cir. 2018).

Although the Second Circuit has never expressly held that the Fourteenth Amendment right to intimate association does not apply to a spouse's claim that adverse action was taken against his spouse in retaliation for protected speech, district courts within the Circuit have applied *Adler* and concluded that "[w]here a plaintiff is allegedly retaliated against for the First Amendment activities of a family member and asserts a claim based on intimate association," the claim "deriv[es] from" and is properly analyzed under the First Amendment. *Agostino v. Simpson*, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008). *See*, *e.g.*, *Rajaravivarma v. Bd. of Trustees for Connecticut State Univ. Sys.*, 862 F. Supp. 2d 127, 168 (D. Conn. 2012) (analyzing under the First Amendment plaintiff's claim that he suffered retaliation for spouse's lawsuit against the state); *Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 274, 276

(E.D.N.Y. 2013) (holding that plaintiff stated a claim for violation of his First Amendment right to intimate association where he alleged that his son was expelled from school in retaliation for his criticism of the school board).

In the case at bar, Clark alleges— like the *Adler* plaintiff alleged— "simple vindictiveness" against a spouse in retaliation for protected speech, which the Second Circuit has deemed a "sufficient motive to sustain a familial association claim" arising under the First Amendment. *Gorman*, 910 F.3d at 47 (citing *Adler*, 185 F.3d at 45). In light of the similarities between the allegations and legal claims of the *Adler* plaintiff and Clark, I construe Clark's intimate association claim as arising under the First Amendment. And despite fully considering Defendants' lengthy treatment of the right to intimate association, I perceive no cause to disturb my prior decision that Clark sufficiently alleges an intimate association claim for the claim to survive Defendants' motion to dismiss it.

For example, Defendants contend in their memorandum that Clark's intimate association claim should be dismissed for failure to allege that Defendants had the likely effect of ending the Clarks' martial relationship or for failure to allege that they intended to end the Clarks' martial relationship. Defs.' Mem., Doc. No. 70-1, at 11, 18. But I am not persuaded that Defendants apply the correct standard to Clark's intimate association claim. As the Second Circuit held in *Adler*, "retaliatory discharge based solely on litigation instituted by one's spouse is actionable under the First Amendment." 185 F.3d at 45. Notably, the Second Circuit did not require therein that the plaintiff demonstrate a particular injury to his martial relationship. *See Talley v. Brentwood Union Free Sch. Dist.,* 2012 WL 3841396, at *10-11 (E.D.N.Y. Sept. 5, 2012) (observing same). Indeed, the Second Circuit has characterized *Adler* as holding that "retaliatory dismissal is a *sufficient* burden on marital relationship to maintain § 1983 action." *Patel v.*

19

*Searles*, 305 F.3d 130, 137 (2d Cir. 2002) (emphasis added).  Here, Clark alleges that his wife was dismissed in retaliation for his legislative advocacy and criticism of a public official.  Thus, he alleges a sufficient burden on his intimate association to state a section 1983 claim.

Moreover, the Second Circuit has only required a plaintiff to allege that state action was "specifically intended to interfere with the family relationship" in the context of a claim for infringement of the right to familial association arising under the Due Process Clause.  *Gorman*, 910 F.3d at 48.  But *Adler* suggests that Clark's claim of retaliatory discharge based solely on legislative advocacy and criticism of a public official arises under the First Amendment, not the Fourteenth Amendment.

In sum, Clark alleges a retaliatory dismissal of his spouse and thus appears to allege a sufficient burden on his marital relationship to maintain a First Amendment intimate association claim under prevailing precedent.  I therefore decline to assess Clark's substantive intimate association claim under an apparently inapposite standard requiring a specific kind of interference or injury to his marriage arising from the alleged interference.  *Accord Talley,* 2012 WL 3841396 at *11 (concluding that the Second Circuit does not require a plaintiff alleging a retaliatory dismissal "to articulate a specific level of injury to the intimate relationship at issue" and "declin[ing] to require such a showing"); *Jones*, 947 F. Supp. 2d at 277-78.  To the extent that Clark's substantive intimate association claim arises under the First Amendment, I deny Defendants' motion to dismiss it.

However, having concluded that precedent directs that I analyze Clark's claim under the First Amendment, I grant Defendants' motion to dismiss the intimate association claim to the extent that it arises under the Fourteenth Amendment.

20

Accordingly, Defendants' motion to dismiss Count Three is **granted in part** and **denied in part**.  The First Amendment intimate association claim will proceed, and the Fourteenth Amendment intimate association claim is dismissed.

### 3. *Liability of Defendant Bucari*

Defendants further argue that Bucari is entitled to qualified immunity, an argument into which they nestle the independent argument that Clark has not pled that Bucari is individually liable.  Defs.' Mem., Doc. No. 70-1, at 19-22.  I first address whether the Second Amended Complaint sufficiently alleges Bucari's individual liability for Clark's substantive claims before addressing, if applicable, whether Bucari is entitled to qualified immunity.

To establish a defendant's liability under section 1983, a plaintiff must show that the particular defendant "is a 'person' acting 'under the color of state law'" and that the defendant "caused the plaintiff to be deprived of a federal right."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).  Here, Bucari indisputably acted under color of state law, so the only issue is his personal involvement in the alleged deprivations.

Under the two-step process set forth in *Iqbal*, I separate a complaint's well-pleaded factual allegations from its legal conclusions at the motion to dismiss stage; although well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff, "[t]hreadbare recitals of the elements of a cause of action" and conclusory statements are not owed similar deference.  *See Danbury Sports Dome, LLC v. City of Danbury*, 2017 WL 4366961, at *2 (D. Conn. Sept. 30, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  Clark asserts that that Bucari "aided Biello in firing Attorney Clark," that Bucari was "motivated to terminate Attorney Clark's employment for the purpose of interfering in [his] intimate association rights and in retaliation" for the Testimony, and that "Bucari acted maliciously and

with intent to cause harm to [Clark] by firing his wife."  SAC, Doc. No. 68, ¶¶ 25-27.  But I

agree with Defendants that such conclusory allegations are not entitled to an assumption of truth.

Setting aside the Second Amended Complaint's conclusory assertions, the allegations concerning

Bucari's involvement in the substantive constitutional deprivation are "meager"— especially in

light of the fact that Bucari cannot be held liable for the action of Biello in terminating Marilee

Clark.  *See* Defs.' Mem., Doc. No. 70-1, at 21-22.

In his opposition memorandum, Clark attempts to supplement the allegation that Bucari

"aid[ed]" Biello in terminating Marilee Clark by explaining that her termination was "within"

Bucari's "believed" and "perceived scope of responsibilities" as General Counsel of DRS.  Pl.'s

Opp'n, Doc. No. 73, at 2.  Clark then asserts that "[g]iven [Bucari's] animosity, and his believed

responsibilities he undoubtedly involved himself in the firing of Attorney Clark."  *Id.* (citations

omitted).  I agree with Defendants that Clark inappropriately attempts to rely on information

outside of the pleadings, which cannot cure the deficiencies of the allegations set forth in the

Second Amended Complaint.  Defs.' Reply, Doc. No. 74, at 1-2.  Moreover, even if I could

consider those assertions, they are too vague and speculative to surpass the plausibility standard

required by *Iqbal.*  In sum, the Second Amended Complaint fails to allege Bucari's personal

involvement in the alleged substantive constitutional deprivations.

Accordingly, Defendants' motion to dismiss Counts One and Three against Bucari is

**granted**.

### E.  Conspiracy Claims: Counts Two and Four

Clark further asserts in Counts Two and Four that Defendants conspired to deprive him of

his constitutional rights to intimate association and speech, respectively.  SAC, Doc. No. 68, at 7.

Defendants, citing to my ruling on their previous motion to dismiss, seek to dismiss the

conspiracy claims on the basis that the Second Amended Complaint fails to allege sufficient facts to give rise to a meeting of the minds.  Defs.' Mem., Doc. No. 70-1, at 18-19 (quoting MTD Ruling, Doc. No. 41 at 25-26).  I disagree with Defendants and conclude that the Second Amended Complaint states just enough allegations of a section 1983 conspiracy to survive Defendants' motion to dismiss.

As explained in my previous ruling, to state a claim for conspiracy, Clark must allege an agreement between two or more state actors to act in concert to deprive him of his constitutional rights and an overt act done in furtherance of that goal, causing him an injury.  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  "[C]onclusory allegations of a § 1983 conspiracy are insufficient," *id.*, and a plaintiff must set forth "some factual basis supporting a meeting of the minds. . . ," *Aho v. Anthony*, 782 F. Supp. 2d 4, 7 (D. Conn. 2011).  Rather, a plaintiff "should make an effort to provide some details of time and place and the alleged effect of the conspiracy," because "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.  *Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir. 1993) (cleaned up).

The Second Circuit has repeatedly indicated that allegations that several defendants met with and communicated with one another immediately before the alleged injurious conduct can support the plausibility of a plaintiff's conspiracy claim.  *See, e.g.*, *Knopf v. Esposito*, 803 F. App'x 448, 453 (2d Cir. 2020) (summary order) (deeming a section 1983 conspiracy claim plausible where plaintiffs' allegations, "specific as to timing and substance," included that several defendants had corresponded by telephone shortly before the alleged injurious conduct); *Dwares*, 985 F.2d at 100 (deeming allegations of a section 1983 conspiracy sufficient where defendant police officers advised antagonists assaulting demonstrators that the officers would

permit the assault, and the officers subsequently failed to intervene in the assault or arrest the

antagonists); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)

(deeming an antitrust conspiracy claim plausible where plaintiff alleged, *inter alia*, that several

defendants had gathered and communicated amongst themselves shortly before the alleged

violative conduct).

Here, construing Clark's allegations liberally and drawing all inferences in his favor,

Clark plausibly alleges a conspiracy between Biello and Bucari to deprive him of his rights

through the retaliatory discharge of his spouse.  In the Second Amended Complaint, Clark adds

allegations strengthening this previously-dismissed claim.  For one, the Second Amended

Complaint newly alleges that Defendants knew of the Clarks' marriage, saw the Clarks sitting

together at the hearing, and "conf[er]red regularly" amongst themselves at the hearing, and that

Bucari sent Biello the written text of the Testimony on that same day.  SAC, Doc. No. 68, ¶¶ 14-

15, 18-20, 22.[3]  Notwithstanding that Clark does not allege any specific comments exchanged

between Biello and Bucari (and that it is certainly plausible that the leader of DRS and his top

deputy would have discussed an unrelated topic), I draw all inferences in Clark's favor and infer

that Biello and Bucari discussed the Testimony— an inference bolstered by the allegation that

Bucari sent Biello the written text of the Testimony that day.  The circumstantial evidence of a

conspiracy is strengthened by Clark's allegation that Defendants initiated discipline against

Marilee Clark via a *Loudermill* notice just twelve days later, on the same day that Clark filed a

Freedom of Information Act request seeking communications between Biello and Bucari,

---

[3] Opposing the motion to dismiss, Clark characterizes the conversation he witnessed at the hearing between Biello and Bucari as directed to the Testimony and "what to do about it." Pl.'s Opp'n, Doc. No. 73, at 4.  The assertion in Clark's memorandum in opposition to the motion to dismiss— asserted outside of the operative pleading— cannot supplement nor supplant the allegations in the Second Amended Complaint.  For the reasons already set forth, I exclude Clark's characterization of the conversation from consideration.

suggesting an inference of retaliation based on temporal proximity. Clark, then, appears to

allege with sufficient specificity a time, place, and effect to raise an inference of a plausible

conspiracy: that Defendants saw the Testimony impugning DRS and Bucari, discussed how to

respond to it, agreed that Biello would terminate Marilee Clark in retaliation for it, and Biello

executed the plan.

Having concluded that Clark states claims for conspiracy, I must take up Defendants'

theory that Counts Two and Four are barred by the intracorporate conspiracy doctrine. *See*

Defs.' Mem., Doc. No. 70-1, at 18-19. Specifically, Defendants claim that because Biello and

Bucari were DRS employees acting within the scope of their employment, they were incapable

of conspiring with one another as a matter of law. *Id.* I cannot agree with their characterization

of the factual allegations.

Under the intracorporate conspiracy doctrine, "officers, agents and employees of a single

corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95,

99 n.3 (2d Cir. 2008) (quotation marks omitted). The Second Circuit has applied the

intracorporate conspiracy doctrine to conspiracy claims arising under section 1985, though it has

not yet ruled that the doctrine also applies to conspiracy claims arising under section 1983. *See*

*Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (applying the doctrine to a claim arising

under 42 U.S.C. § 1985); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363,

388 (S.D.N.Y. 2013) (observing that the Second Circuit has not extended the doctrine to 42

U.S.C. § 1983). Nevertheless, district courts within the Second Circuit have generally concluded

that the doctrine bars conspiracy claims arising under section 1983 when employees or agents of

a single entity act within the scope of their employment. *See*, *e.g.*, *Anemone v. Metro. Transp.*

*Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) ("In the absence of controlling contrary

authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound."); *Chamberlain*, 986 F. Supp. 2d at 388 (collecting cases).

Even then, an exception to the intracorporate conspiracy doctrine may arise when defendants are "pursuing personal interests wholly separate and apart from the entity" (the so-called "personal stakes" exception). *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). In the First Amendment context, at least one district court in the Circuit has applied the personal stakes exception where a plaintiff alleged retaliation for protected speech. *See Medina v. Hunt*, 2008 WL 4426748, at *8-*9 (N.D.N.Y. Sept. 25, 2008) (where incarcerated plaintiff alleged that defendant guards conspired to assault him in retaliation for his participation in a federal lawsuit, defendants were acting in their own interests). However, "personal bias" will not constitute "the sort of individual interest that takes a defendant out of the intraenterprise conspiracy doctrine" when the alleged injurious conduct arguably serves a legitimate interest of the employer. *Peters v. City of New York*, 2005 WL 387141, at *4 (S.D.N.Y. Feb. 16, 2005) (quoting *Johnson v. Nyack Hospital*, 954 F. Supp. 715 (S.D.N.Y. 1997)).

Here, again liberally construing the pleadings and drawing all inferences in Clark's favor, I cannot conclude on the record at the motion to dismiss stage that Defendants were acting entirely with the scope of their employment and exclusively in the interest of DRS. Without relying on Clark's conclusory assertions concerning Defendants' motives, *see* SAC, Doc. No. 68, ¶¶ 26-29, I infer from the pleadings and the Testimony that Defendants could plausibly have retaliated against Clark for the Testimony because Clark criticized and shamed Bucari in a very

public setting before Biello's legislative overseers.  The factual allegations, then, support an inference of a motive with personal— rather than professional— stakes.

To be clear, I deny the intracorporate conspiracy doctrine aspect of Defendants' motion without prejudice to Defendants renewing this argument at a later stage of this proceeding. When presented with a full record, I may conclude (or a jury may conclude) that Defendants served legitimate interests of DRS when they agreed to terminate Marilee Clark's employment. But limited as I am to the record before me, I am not ready to dismiss the conspiracy claims at this time.

Accordingly, Defendants' motion to dismiss the Counts Two and Four is **denied**.

## V.    Conclusion

For the foregoing reasons, I rule as follows.

I **grant** Clark's Motion to Compel, Doc. No. [67].

I **grant** Defendants' Motion to Strike, Doc. No. [69].

I **grant in part** and **deny in part** Defendants' Motion to Dismiss, Doc. No. [70], as follows.  Clark's substantive claims for infringement of the right of intimate association, to the extent that it arises under the First Amendment, and his claim for First Amendment retaliation may proceed against defendant Biello, in his individual capacity.  However, Clark's claim for infringement of the right of intimate association, to the extent that it arises under the Fourteenth Amendment's Due Process Clause, and his substantive claims against defendant Bucari are dismissed.  Clark's claims of conspiracy to deprive him of his First Amendment rights to speech and intimate association may proceed against both defendants, without prejudice to Defendants' renewing their intracorporate conspiracy doctrine argument at a later stage of litigation.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge